

FILED
DISTRICT COURT OF GUAM

FEB 22 2010

JEANNE G. QUINATA
CLERK OF COURT

**LUJAN AGUIGUI & PEREZ** LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064
Facsimile (671) 477-5297

*Attorneys for Defendant*
*Port Authority of Guam*

IN THE UNITED STATES DISTRICT COURT

DISTRICT COURT OF GUAM

| | |
|---|---|
| WATTS CONSTRUCTORS, LLC an Iowa limited liability company, and WATTS-HEALY TIBBITTS A JV, a joint venture,<br><br>Plaintiffs,<br><br>v.<br><br>PORT AUTHORITY OF GUAM, a Guam public corporation,<br><br>Defendant. | CIVIL CASE NO. 10-00002<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[Oral Argument Requested]<br><br>[Fed. R. Civ. P. 12(b)] |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

APPLICABLE STANDARDS ............................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.    PLAINTIFFS' CLAIMS ARE BARRED ON THE GROUNDS OF SOVEREIGN IMMUNITY .............................................................................. 4

        A.    Plaintiffs' claims are essentially contract claims. ................................................. 4

        B.    The Government of Guam and the Port, as part of that government, posses sovereign immunity from suit. ............................................................. 5

        C.    Guam's sovereign immunity may be waived only by duly enacted legislation; in the absence of a waiver of immunity, no waiver exists. ................................................................................................... 6

    II.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES .............................................................................. 7

        A.    Exhaustion of administrative remedies is required prior to bringing suit. ........................................................................................................ 7

        B.    Effective administrative remedies for Plaintiffs' claims are available under the Port's tariffs, policies, or rules and regulations. ............................................................................................................ 8

        C.    Plaintiffs availed themselves of the Port's administrative process for raising disputes; Plaintiffs should be required to exhaust this process. ..................................................................................................... 9

        D.    Referring to a billing dispute as a constitutional claim does not dispense with the exhaustion requirement. ................................................... 11

        E.    Plaintiffs failed to exhaust their administrative remedies with regard to their Second Claim for Relief – Unauthorized Imposition of Fine; their claim should therefore be dismissed. .......................... 12

    III.    WITH REGARD TO PLAINTIFFS' TENTH CLAIM FOR DECLARATORY RELIEF – VIOLATION OF §1421i(a) OF THE ORGANIC ACT OF GUAM, PLAINTIFFS' PURPORTED "TAX" CLAIM IS WITHOUT MERIT AND OUSIDE THE COURT'S JURISDICTION. ............................................. 12

CONCLUSION .................................................................................................................... 13

Defendant Port Authority of Guam respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Plaintiffs' Complaint.

## INTRODUCTION

Defendant Port Authority of Guam (the "Port") moves the Court to dismiss Plaintiffs' complaint on two grounds. First, Plaintiffs' claims are essentially complaints about the billing imposed upon them by the Port for cargo operations that occurred in July-August and November 2009. By their own admission, Plaintiffs paid the first bill from the Port and then agreed to be billed for the next loading operation. (Compl. ¶¶ 22, 23). Plaintiffs' claims are thus contract claims arising out of their payment of and agreement to pay the Port charges. Although Plaintiffs assert their complaint is grounded in questions of constitutional right and federal common law (Compl. Fourth through Tenth Claim for Relief), the cloaking of a contract claim in constitutional jargon does not change the essence of the contract claim. Given their nature, Plaintiffs' claims are barred because the Port Authority of Guam, as part of the Government of Guam, possesses sovereign immunity derived from the Organic Act of Guam, a federal law. Under the Organic Act, the Government of Guam, and therefore the Port, cannot be sued unless the Guam Legislature waives its sovereign immunity. The Guam Legislature has provided a limited waiver of sovereign immunity for certain causes of action in contract and negligent torts, but only if certain statutory requirements are met. The Guam Legislature has not waived sovereign immunity for claims for declaratory or non-monetary contract relief and the Port is therefore immune from suit for such relief. "In order for someone to sue the Government of Guam or any governmental agency, sovereign immunity must be waived. Unless a sovereign specifically waives suit by duly enacted law, it may not be sued." *Wood v. Guam Power Authority*, 2000 Guam 18, 4. "It has been held that territorial government [sic] so created are immune from suit without their consent even when the Organic Act provided that they could be sued." *Crain v. Government of Guam*, 97 F. Supp 433, 434 (D. Guam 1951) *aff'd,* 195 F.2d 414 (9th Cir. 1952).

Second, independent from the issue of the Port's immunity from suit, Plaintiffs' claims should be dismissed because they failed to exhaust the administrative remedies available to them

to resolve the billing dispute that is at the center of their claims. Such failure renders their claims subject to dismissal. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993).

## BACKGROUND[1]

Plaintiff Watts Constructors, LLC is a limited liability company organized and existing under the laws of Iowa ( Compl. ¶ 2). Plaintiff Watts-Healy Tibbits A JV is a joint venture governed by the laws of Delaware (Compl. ¶ 3). The Plaintiffs are referred to collectively hereinafter as "Plaintiffs" or "Watts."

Defendant Port Authority of Guam is a public corporation and autonomous instrumentality of the government of Guam (12 GCA §10102).

The Plaintiffs, through the employment of shipping agent Norton Lilly International Inc and use of a hull tug and hull barge, the Thomas/Brusco 401, engaged in the load-out of cargo at the Guam Shipyard in July-August 2009 (the "July-August 2009 loading operation") and November 2009 ("the November 2009 loading operation") (Compl. ¶ 3, 17, 18, 19). Plaintiffs allege that the Guam Shipyard is a private facility that subleases a wharf within Apra Harbor, Guam, from the Guam Economic Development Authority which leases the property from the U.S. Navy. (Compl. ¶ 16).

During the November 2009 loading operation, Plaintiffs accepted an arrangement by which the Port would permit the Plaintiffs to load cargo at the Guam Shipyard while permitting Port personnel to participate in the load-out and by which the Port would assess upon Plaintiffs fees based on the services provided and the work performed by the Port. (Compl. ¶ 23)

---

[1] Plaintiffs' factual allegations contained in their complaint are assumed as true only for the purposes of this Motion.

Watts was billed by the Port Authority of Guam for both cargo loading operations (Compl. ¶ 20, 25). On November 5, 2009, the Port issued invoice number 74704 in the amount of $88,808.03 for the July-August 2009 loading operation and Watts paid the invoice in full on November 6, 2009 (Compl. ¶20, 22). On November 23 – 24, 2009, the Port issued three additional invoices for the July-August 2009 and November 2009 loading operations (Compl. ¶25). Watts delivered to the Port on November 23, 2009 a check in the amount of the Port's unpaid billings for the July-August and November loading operations (Compl. ¶ 28). Plaintiffs have alleged that this check was delivered as security for the subsequent delivery of a letter of credit as payment of the Port's billing (Compl. ¶ 27). On November 30, 2009 Watts delivered a conditional Letter of Credit to the Port and requested that the letter of credit be exchanged for the check Watts had previously remitted to the Port. On November 30, 2009, Watts stopped payment on the check (Compl ¶ 27 – 29).

On November 30, 2009 Watts submitted a written protest and notice of dispute to the Port regarding the Port's billing (Compl. ¶ 31).

On January 15, 2010 Plaintiffs filed their instant complaint initiating this lawsuit.

The complaint asserts eleven claims for declaratory relief. Four of these, the first, second, third and eleventh claim for relief, involve the application of general common law theories. The remaining seven claims appear on their face to allege violations of federal common law, federal statutes, or the U.S. constitution. However, as explained below, these claims are based in contract, not federal law or doctrine.

## APPLICABLE STANDARDS

Defendant Port Authority of Guam moves the court to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) based upon Defendant's immunity from suit and Plaintiffs' failure to exhaust administrative remedies. Sovereign immunity is a jurisdictional issue. "[I]f [Plaintiff's] case is not covered by the waiver of sovereign immunity, then this court lacks jurisdiction to hear this appeal." *Wood v. Guam Power Authority*, 2000 Guam 18, 4. *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign

immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature." (internal citations omitted)); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d, 1297, 1302-1303 (10th Cir 2001) "Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed.R.Civ.P. 12(b)(1)." (internal citations omitted.). As to exhaustion of administrative remedies, the Ninth Circuit has held "[i]f the district court concludes that the [plaintiff] has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). "A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint…The complaint need not contain detailed factual allegations, but it must provide more than 'a formulaic recitation of the elements of a cause of action.' … In short, the complaint must allege 'enough facts to state a claim that is plausible on its face.' If 'plaintiffs [do] not nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Cyfred, Ltd. d v. Ticor Title Insurance Company*, 2009 WL 4730327, *2 -3 (D. Guam 2009) *quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE BARRED ON THE GROUNDS OF SOVEREIGN IMMUNITY

#### A. Plaintiffs' claims are essentially contract claims.

Plaintiffs allege in their Fourth through Tenth Claims for relief that the Port violated various constitutional provisions and federal law doctrines by charging the Plaintiffs for their loading operations. However, Plaintiffs' claims are grounded in contract, not constitutional or other federal issues. Plaintiffs admit that they were billed $88,808.03 by the Port for the July-August loading operation and that they paid this bill in full (Compl. ¶ 20, 22). Plaintiffs admit they agreed to accept a payment arrangement whereby the Port would assess further fees for the November loading operation based on the services provided and the work performed by the Port (Compl. ¶ 23). Plaintiffs affirmed the agreement by tendering payment for the Port's charges, albeit in the form of a check they subsequently cancelled and a conditional letter of credit.

(Compl. ¶ 28 – 29). Plaintiffs now seek a return of the $88,808.03 payment and a declaration that they do not owe the Port money pursuant to the payment arrangement they entered into with the Port. These claims, though dressed up as constitutional and federal claims for declaratory relief, are essentially contract claims and, as discussed below, the Port is immune from suits based on contract claims except to the extent such immunity has been waived; it has not been waived here.

### B. The Government of Guam and the Port, as part of that government, posses sovereign immunity from suit.

All causes of action in the Plaintiffs' complaint should be dismissed as those claims are barred on grounds of the Port's sovereign immunity. The Organic Act of 1950 (48 U.S.C. §1421 *et seq.*) is a federal law that designated the island of Guam as an unincorporated territory of the United States; established executive, legislative, and judicial branches; and transferred federal jurisdiction over Guam from the United States Navy to the Department of the Interior. *Ngiraingas v. Sanchez* 858 F.2d 1368, 1370 (9th Cir. 1988), *aff'd*, 495 U.S. 182 (1990) ("Guam is an unincorporated territory whose status is governed by the Organic Act of 1950, 48 U.S.C.A. §§1421 – 1424(b) (1987). 'It enjoy[s] only such powers as may be delegated to it by Congress in the Organic Act …' (*quoting Sakamoto v. Duty Free Shoppers, Ltd.* (9th Cir. 1985) 764 F.2d 1285, 1286, cert. denied, 475 U.S. 1081 (1986)) … As such, it 'is in essence an instrumentality of the federal government,' much like a federal department or administrative agency.") (internal citation omitted.).

The Ninth Circuit has held that as an "instrumentality of the federal government," Guam's governance, and its sovereign immunity, is based entirely on the federal statute that created them: "[T]he federal government bestows on Guam its powers and, unlike the states, which retain their sovereignty by virtue of the Constitution, Guam's sovereignty is entirely a creation of federal statute." *Ngiraingas, supra*, 858 F.2d at 1371. *See also Pac. Rock Corp v. Perez*, 2005 Guam 15, ¶32 n. 6 ["The existence of [Guam's] sovereign immunity … exists … by virtue of the Organic Act of Guam"]).

The Port is part of the Government of Guam and therefore possesses sovereign immunity. *See Bordallo v. Reyes*, 763 F.2d 1098, 1103 (9th Cir. 1985) ("[I]n creating certain public

corporations, such as the Guam Airport Authority, the Guam Telephone Authority, the Guam Power Authority, and the *Port Authority of Guam*, the Legislature had expressly designated each as a public corporation and as an *instrumentality of the government*." (emphasis added).

### C. Guam's sovereign immunity may be waived only by duly enacted legislation; in the absence of a waiver of immunity, no waiver exists.

Section 3 of the Organic Act of Guam (48 U.S.C. §1421a) provides that "The government of Guam shall have the powers set forth in this Act, shall have power to sue by such name, and with the consent of the legislature evidenced by enacted law, may be sued upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers." The exceptions to Guam's immunity are clearly stated to be for, *and limited to*, contracts entered into or torts committed incident to the exercise by Guam's government of its lawful powers. The Port is subject to suit only where Congress has authorized the suit or the Guam legislature has waived immunity from suit pursuant to specific authority granted by Congress. *Sumitomo Construction Co., Ltd. v. Gov't of Guam*, 2001 Guam 23 ¶ 9 "Under the Organic Act, sovereign immunity can only be waived by duly enacted legislation. Unless such legislation exists, the government cannot be sued." (internal citation omitted).

Pursuant to the authority granted it by 48 U.S.C. §1421a, the Guam legislature has waived sovereign immunity in very limited circumstances. The Guam Government Claims Act, Chapter 6, Title 5 GCA §§6101 – 6404 waives the government's sovereign immunity in only very limited circumstances as specifically stated in 5 GCA §6015:

> Waiver of Immunity. Pursuant to Section 3 of the Organic Act of Guam, the Government of Guam hereby waives immunity from suit, but only as hereinafter provided: *(a) for all expenses incurred in reliance upon a contract to which the Government of Guam is a party, but if the contract has been substantially completed, expectation damages may be awarded;* (b) for claims in tort, arising from the negligent acts of its employees acting for and at the direction of the government of Guam ... (c) the Government of Guam shall not be liable for claims arising from an exercise of discretion in making policy.

Plaintiffs' claims arise out of a contract (an agreement to pay money to the Port "based on the services provided and work performed" (Compl. ¶ 23)). Plaintiffs seek return of their initial

Case 1:10-cv-00002   Document 9   Filed 02/22/2010   Page 8 of 15

6

payment (as restitution) with interest thereon (Compl. ¶ 22, Compl. Prayer for Relief ¶ 14) and declaratory relief regarding the Port's authority to charge them. Plaintiffs' claims are merely seeking to void an agreement to pay the Port; these claims fall squarely within the realm of contract law. Though the Government Claims Act waives the Port's immunity from suit based in contract, it does so only to the extent a plaintiff seeks "expenses incurred in reliance upon a contract." 5 GCA §6015. That is not the case here as Plaintiffs did not incur expenses in reliance upon a contract. Plaintiffs' claims do not fall within this limited exception, and as such, are barred. *Crain v. Government of Guam*, 97 F. Supp. 433, 434 (D. Guam 1951), *aff'd* 195 F.2d 414 (9th Cir. 1952), "The Government of Guam has not consented to this action against it and it is the court's opinion that is immune from suit without its consent. It follows that the court has no jurisdiction over the defendant."

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

### A. Exhaustion of administrative remedies is required prior to bringing suit.

Filing of suit prior to proper exhaustion of non-judicial remedies is premature and cause for dismissal.[2] There is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50 - 51 (1938).

The U.S. Supreme Court recognizes that the requirement of exhausting available administrative remedies is well settled in administrative law. "This court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 - 145 (1992). "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative

---

[2] Case law authority appears to also allow a stay of judicial proceedings pending exhaustion of administrative remedies. *See Cyfred v. Ticor Insurance Company*, 2009 WL 4730327 (D. Guam 2009); *Morrison-Knudsen Co v. CHG International*, 811 F.2d 1209, 1223 (9th Cir. 1987) ("The district court may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review.").

Case 1:10-cv-00002   Document 9   Filed 02/22/2010   Page 9 of 15
7

law." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) citing *McKart v. United States*, 395 U.S. 185, 193 (1969).

### B. Effective administrative remedies for Plaintiffs' claims are available under the Port's tariffs, policies, or rules and regulations.

The Port Authority of Guam, by and through its Board of Directors or General Manager, has the authority to set rates and to set procedure for the administration of its powers. Specifically, 12 GCA §10104 (j) provides:

> The Board [of the Port] shall: (j) Fix all rates, deckage rentals, tolls, pilotage, wharfage and charges for the use and occupation of the public facilities or appliances of the Port, and for services rendered by the Authority and to provide for the collection thereof.

Further, 12 GCA §10105(g) states the Board may:

> Adopt, enforce, amend or repeal harbor and port regulations for the use and navigation of Apra Harbor and the facilities of the Port Authority of Guam, and to adopt, enforce, amend or repeal such other orders, regulations and practices that are necessary for the administration and discharge of its duties and powers.

Pursuant to its statutory authority, the Board approved and issued its Board Policy Memorandum No. 2002-10 in April 2002. Memorandum 2002-10, which is included as part of the Port's published Terminal Tariff, provides:

> 2. Any dispute regarding invoices or charges on any invoice must be received in writing by the Port Authority within thirty (30) days of the invoice date. This dispute will be considered ripe for consideration only after the undisputed portion of the invoice is paid in full. No dispute will be considered until the undisputed portion of the invoice is paid in full. …
>
> 4. The Port Authority will endeavor to respond to timely-filed disputes which are ripe for consideration (i.e. the undisputed portion of the invoice is paid in full) within sixty (60) days of the dispute becoming ripe for consideration. Interest will begin to accrue on all disputes on the day of denial or deemed denial.
>
> 5. *A party dissatisfied with the denial or deemed denial by the Port Authority of a dispute must demand arbitration (pursuant to the arbitration clause Board Policy Memorandum 2002-09) within thirty (30) days of the denial or deemed denial.* Once a demand for arbitration is received in writing by the Port Authority,

> interest on the charge(s) originally disputed will only be assessed from the date of the denial or deemed denial by the Port Authority to the date of the demand for arbitration. Each party shall bear their own costs and attorney's fees incurred in arbitrating disputes over invoices.

*See* Port's Request for Judicial Notice ("Request for Judicial Notice"), submitted concurrently herewith, Ex. A at Bates No. PAG 015 - 016. The Port Board also adopted Policy Memorandum 2002-09 in April 2002, which describes the procedural requirements for arbitration. By virtue of Policy Memoranda 2002-09 and 2002-10, administrative remedies are clearly available to the Plaintiffs.

### C. Plaintiffs availed themselves of the Port's administrative process for raising disputes; Plaintiffs should be required to exhaust this process.

Plaintiffs' knowledge of the Port's policy for disputed billing is apparent; Plaintiffs cite both Policy Memoranda 2002-09 and 2002-10 in their complaint (Compl. ¶ 88 – 89). Additionally, Plaintiffs admit that in order to preserve their rights under the Port's disputed billing policies, Watts gave timely notice to the Port that it contested the Port's charges for its loading operations (Compl. ¶ 90). Plaintiffs therefore began the process of disputing the Port's charges for the Shipyard load-outs, and availed themselves of the available administrative remedy for their dispute. In line with the doctrine of exhaustion of administrative remedies, Plaintiffs should be prevented from arbitrarily abandoning the administrative process for dispute resolution and be required to exhaust that process. Plaintiffs' complaint should be dismissed until they complete the procedure that provides them the opportunity to resolve their dispute.

Requiring proper use of the Port's mechanisms for dispute resolution furthers the policy behind the exhaustion requirement. As the court put it in *Woodford v. Ngo*, 548 U.S. 81, 89 - 90 (2006):

> Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects 'administrative authority.' Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages disregard of [the agency's] procedures. [Quoting McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081] Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in

> proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. [internal citations omitted.] ... 'And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.' [internal citations omitted.]... Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' *Pozo*, 286, F.3d, at 1024 (emphasis in original). ... Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings.

*Woodford v. Ngo* at 89. The Guam Supreme Court has also embraced the doctrine of exhaustion:

> There are several reasons for the exhaustion of remedies doctrine. The basic purpose ... is to 'lighten the burden of overworked courts in cases where administrative remedies are available.' *Morton v. Sup. Ct.* 88 Cal. Rptr. 533, 536 (1970). A second justification for upholding the doctrine of exhaustion of administrative remedies is revealed in *Westlake Community Hospital v. Superior Court*, 551 P.2d 410, 416 (Cal. 1976), where it was recognized that even where the administrative remedy may not provide the specific relief sought by a party or resolve all the issues, exhaustion is preferred because agencies have the specialized personnel, experience and expertise to unearth relevant evidence and provide a record which a court may review.

*Carlson v. Perez*, 2007 Guam 6, ¶ 69

The Port's dispute resolution procedures amount to administrative remedies which the Plaintiffs should be required to exhaust. *See Johnson v. District of Columbia*, 368 F. Supp.2d 30, 35 (D. D.C. 2005). "[Plaintiff's] arbitration remedy has yet to be finalized, either by the completion of an arbitration or the District's final refusal to arbitrate. Until such time as one of these two 'finalizing events' occurs, [plaintiff's] administrative remedies for the claims she asserts here simply cannot have been exhausted." *Collins v. Burlington Northern Railroad*

*Company*, 867 F2d 542, 545 (9th Cir. 1989). ("Because plaintiffs have taken no further affirmative steps to refer the matter to an arbitration committee, plaintiffs have failed to exhaust their mandatory administrative remedies…").

Additionally, Plaintiffs' claims are capable of full resolution at the administrative level; if they are successful in arbitration, they may be issued a decision that they are not required to pay the Port's charges. Such a decision would grant Plaintiffs the full relief they seek from the Court and further the underlying principles of the exhaustion doctrine. As stated by the court in *Johnson v. District of Columbia*, 368 F.Supp.2d at 43:

> After all, if [plaintiff's] arbitration goes forward, and if [plaintiff] obtains a favorable ruling therein, she will receive, presumably, as complete a remedy through administrative channels as she would at the conclusion of litigation in this Court. Of course, if the arbitration is further delayed, [plaintiff] might receive her remedy more quickly in this forum. Such an expedited resolution would undoubtably [sic] prove beneficial to [plaintiff]. However, that small benefit cannot outweigh the benefits that accrue from allowing administrative agencies to conduct their business free from federal court intervention. If delay, without more, were a justification for excusing the requirement of exhaustion of administrative remedies, then the requirement would be rendered virtually meaningless.

The court should therefore dismiss the present case and require instead that the Plaintiffs allow the administrative process to run its course.

    **D.**    **Referring to a billing dispute as a constitutional claim does not dispense with the exhaustion requirement.**

In their complaint, Plaintiffs have joined their claims of disputed billing with claims of violation of constitutional rights by the Port. The mere titling of a billing dispute as a constitutional issue does not change the nature of the controversy or the remedies available to resolve it. But even if Plaintiffs' claims were taken to be based in constitutional law, such construction would still **not** preclude the application of the exhaustion doctrine. *Marine Mammal Conservancy v. Department of Agriculture*, 134 F.3d 409, 413 (D.C. Cir. 1998). "[Plaintiff] is very much mistaken in believing that there is some bright-line rule allowing litigants to bypass administrative appeals simply because one or all of their claims are constitutional in nature.

Exhaustion of even constitutional claims may promote many of the policies underlying the exhaustion doctrine."

### E. Plaintiffs failed to exhaust their administrative remedies with regard to their Second Claim for Relief – Unauthorized Imposition of Fine; their claim should therefore be dismissed.

Plaintiffs' second claim for relief seeks a declaration that the Port unlawfully and without authorization imposed a fine of $2,500.00 on Norton Lilly for the Thomas/Brusco 401's entry into Apra Harbor (Compl. ¶ 24, 44). The Port has authority to issue civil penalties, in the form of fines, for conduct that violates its Harbor Rules and Regulations. *See* Harbor Rules and Regulations for the Port Authority of Guam as adopted by Guam Public Law 26-72, §1.7 ("Any person who violates any of these Rules and Regulations, or who fails to perform any duty imposed thereby ... shall be guilty of a misdemeanor. In addition, such person shall be subject to a civil penalty not to exceed the sum of Five Thousand Dollars ($5,000)."). The Port's Harbor Rules and Regulations provide a specific mechanism for resolving contested cases. *See id.* §1.10 ("1.10 Procedure in Contested Cases. All complaints and appeals authorized by these Rules and Regulations shall be adjudicated pursuant to the Administrative Adjudication Law, 5 G.C.A. §9100 et. seq."). In accordance with the doctrine of exhaustion of administrative remedies, Plaintiffs should be required to complete the administrative process available to them. Their second claim should therefore be dismissed.

### III. WITH REGARD TO PLAINTIFFS' TENTH CLAIM FOR DECLARATORY RELIEF – VIOLATION OF §1421i(a) OF THE ORGANIC ACT OF GUAM, PLAINTIFFS' PURPORTED "TAX" CLAIM IS WITHOUT MERIT AND OUSIDE THE COURT'S JURISDICTION.

In their Tenth Claim for Relief, Plaintiffs cite the Organic Act, specifically 48 U.S.C. §1421i(a) as follows:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: *Provided*, That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.

(Compl. ¶ 80).

Case 1:10-cv-00002   Document 9   Filed 02/22/2010   Page 14 of 15
12

Plaintiffs further state, "[t]he fees or tariffs imposed by the port on any or all of the Joint Venture-Related Parties constitute a tax in addition to the income tax already levied on Guam." (Compl. ¶ 81).

In their Tenth claim, Plaintiffs go further than simply cloaking a billing dispute as a constitutional issue and attempt to convert it to a wrongful tax claim. This claim is without merit because the Port has never had anything to do with establishing, collecting, or assessing any taxes. The authority to do so is vested in a completely separate agency of the Government of Guam, the Department of Revenue and Taxation. *See, e.g.*, 11 GCA §1103 (charging the Department of Revenue and Taxation "with the enforcement of the tax laws of Guam"); *see also* 11 GCA §1104. Plaintiffs' dispute is not a tax issue, but even were it so, the Court still lacks jurisdiction over the claim and should therefore dismiss it. Not only is such a claim for declaratory relief barred on grounds of sovereign immunity, it does not fall within the ambit of the declaratory judgment statute, 28 U.S.C. §2201. *See Crain v. Government of Guam*, 97 F.Supp 433, 434 (D.C. Guam 1951), *aff'd,* 195 F.2d. 414, (9th Cir. 1952). "The only definite relief asked is for a declaratory judgment, but the statute authorizing the district court to render a declaratory judgment does not authorize its application in controversies in respect of tax problems. 28 U.S.C.A. §2201." Plaintiffs' Tenth Claim for Relief should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendant's motion to dismiss.

Dated: February 22, 2010.

LUJAN AGUIGUI & PEREZ LLP

By: _____
REBECCA PEREZ SANTO TOMAS, ESQ.
*Attorneys for Defendant Port Authority of Guam*